UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST ZIERLE,

        Plaintiff,                             Hon. Ellen S. Carmody

v.                                               Case No. 5:06 CV 135

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On January 15, 2007, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Wendell A. Miles referred the matter to this Court. (Dkt. #9).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The standard

affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 59 years of age on the date of the ALJ's decision. (Tr. 16). He completed two years of college and worked previously as an airport security screener, vocational instructor, salesman, electrician, and inspector. (Tr. 64, 69, 73-81).

Plaintiff applied for benefits on November 6, 2003, alleging that he had been disabled since December 1, 2002, due to angina, rotator cuff instability of the right shoulder, and shortness of breath. (Tr. 38-40, 63). Plaintiff's application was denied, after which time he requested a hearing before an ALJ. (Tr. 28-37). On July 26, 2005, Plaintiff appeared before ALJ Frederick Michaud, with testimony being offered by Plaintiff, medical expert, Dr. Ricky Bello, and vocational expert, Heather Benton. (Tr. 194-221). In a written decision dated September 9, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 16-20). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff then initiated this appeal pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

On January 7, 2003, Plaintiff participated in a treadmill exercise test, the results of which were "normal." (Tr. 118). On February 17, 2003, Plaintiff participated in a cardiac imaging study, the results of which were "mildly abnormal. . .revealing a small old inferior wall infarction

with mild inferior ischemia." (Tr. 116). Plaintiff also participated in a cardiovascular stress test, the results of which were "negative" and revealed that Plaintiff possesses "a fair level of exercise tolerance for age." (Tr. 117).

On February 27, 2003, Plaintiff was examined by Dr. Michael James. (Tr. 101-03). Plaintiff reported that he was experiencing chest pain. (Tr. 101). Plaintiff exhibited "expiratory wheezes, prolonged expiration, [and] decreased breath sounds in all lung fields," but the results of an examination were otherwise unremarkable. (Tr. 102). Plaintiff reported that he smokes cigars and consumes alcohol "regularly." When asked about his illicit drug use, Plaintiff reported that he "uses, but doesn't abuse" drugs. The doctor recommended to Plaintiff that he participate in a "diagnostic catheterization," which Plaintiff refused. Dr. James concluded that Plaintiff was capable of working so long as he did not lift more than 50 pounds. *Id.*

On September 4, 2003, Dr. Joseph Kozlowski, Plaintiff's primary care physician, reported that Plaintiff suffers from: (1) stable angina; (2) rotator cuff instability of the right shoulder; and (3) dyspnea. (Tr. 114). The doctor further reported that Plaintiff was able to perform his job as an airport security screener, except that he could not lift more than 20 pounds. *Id.*

On November 27, 2003, Plaintiff completed a report regarding his daily activities. (Tr. 84-90). Plaintiff reported that he washes dishes, helps with the laundry, mows the lawn (with a riding lawn mower), performs "minor" repairs, plays cards, helps care for his grandchildren, shops for groceries, cooks, and cares for his dogs. *Id.*

On February 4, 2004, Plaintiff reported to the emergency room complaining of chest pain. (Tr. 163-66). An x-ray of Plaintiff's chest "revealed findings consistent with chronic obstructive pulmonary disease" and the results of an electrocardiogram examination revealed "no

acute findings." (Tr. 165). Two days later, Plaintiff underwent a cardiac catheterization procedure, the results of which revealed the presence of "single-vessel coronary artery disease involving the proximal left anterior descending artery with a 75% stenosis." (Tr. 179-81). A stent was implanted in Plaintiff's proximal left anterior descending artery. *Id.* Plaintiff was discharged home the following day, at which time he was diagnosed with: (1) unstable angina; (2) coronary artery disease; (3) hyperlipidemia; (4) hypertension; (5) pulmonary emphysema; and (6) impingement syndrome of the right shoulder. (Tr. 170).

On August 19, 2004, Plaintiff was examined by Dr. James. (Tr. 187-88). Plaintiff reported that he was experiencing lethargy and decreased exercise tolerance. (Tr. 187). An examination revealed "no overt negative physical findings in the heart," but the doctor characterized Plaintiff's breath sounds as "markedly decreased." *Id.* Dr. James concluded that Plaintiff would benefit from "cardiac rehab," which Plaintiff indicated "he was not terribly interested in pursuing." (Tr. 188). Plaintiff was also reluctant to participate in a recommended stress test. *Id.*

An April 14, 2005 examination revealed no evidence that Plaintiff was experiencing angina attacks. (Tr. 191). Plaintiff also reported that he was "working in [his] yard." *Id.*

At the administrative hearing, Dr. Ricky Bello testified as a medical expert. The doctor testified that he had reviewed Plaintiff's medical records. (Tr. 200). According to Dr. Bello, while Plaintiff suffers from coronary heart disease, his condition does not satisfy the requirements of any impairment identified in the Listing of Impairments. (Tr. 200-02). The doctor also testified that Plaintiff could perform work in the "light range" of exertion. (Tr. 202).

At the administrative hearing, Plaintiff testified that he is "normally not physically active." (Tr. 207-08). He reported that is unable to work due to tremors and random chest pain. (Tr.

5

207-10). Plaintiff reported that he can walk "slow" for "maybe a half an hour." (Tr. 210). He also reported that his "leg goes numb" if he sits "for long periods of time." *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations provide a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) coronary artery disease; (2) hyperlipidemia; (3) hypertension; (4) pulmonary emphysema; and

---

[1]  1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

(5) impingement syndrome of the right shoulder. (Tr. 16). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* Finding that Plaintiff could perform his past relevant work as a vocational teacher and sales representative, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 16-19).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 10 pounds frequently and 20 pounds occasionally; (2) he can stand and/or walk up to 6 hours in an 8-hour workday; and (3) he can sit for 6 hours during an 8-hour workday. (Tr. 18). Relying on the testimony of a vocational expert, the ALJ determined that Plaintiff, despite his

impairments, retained the ability to perform his past relevant work as a vocational teacher and sales representative. (Tr. 16-19). Accordingly, the ALJ concluded that Plaintiff was not disabled.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff asserts that the ALJ's decision must be rejected because he suffers from "work preclusive" angina. As discussed above, Plaintiff was diagnosed in 2003 as suffering from stable angina. However, following his September 6, 2004 catheterization procedure, Plaintiff was diagnosed as suffering from (among other maladies) unstable angina. Petitioner questioned the vocational expert about his diagnosis of unstable angina. The relevant exchange is as follows:

> Q: Okay, Ms. Benson, assuming hypothetically that Mr. Zierle, the claimant has chest pains and unstable angina is what his diagnosis is, that these chest pains might occur at any time and be such that they would be debilitating and prevent him from being able to [per]form his job functions. Would there be any jobs that he could do considering the random nature of his, his angina?
>
> A: I believe that few employers would tolerate what essentially would be unscheduled breaks of an indeterminate length that could happen at any time in any number throughout the day, I think that would be work preclusive.
>
> Q: Okay. So in your opinion then a claimant could carry the diagnosis of unstable angina which would lead to that unpredictable chest pains which would be work preclusive?
>
> A: Oh, I can't address the diagnosis but if the outcome of his problems involve unscheduled breaks like I mentioned of indeterminate length and number that would be work preclusive.

(Tr. 216).

Plaintiff asserts that given the vocational expert's testimony, the ALJ was obligated to find him disabled. However, a careful reading of the vocational expert's testimony reveals that she did not conclude that Plaintiff was unable to work. Instead, the vocational expert simply testified that "if" Plaintiff's condition resulted in him being required him to take "unscheduled breaks of an indeterminate length," such would be work preclusive. The record contains no evidence, however, that Plaintiff's condition imposes, or could reasonably be expected to impose, such a limitation.

Following his diagnosis of unstable angina, Plaintiff was examined by Dr. James on August 19, 2004. This examination revealed "no overt negative physical findings in the heart." The doctor recommended to Plaintiff that he participate in "cardiac rehab," but Plaintiff indicated that "he was not terribly interested in pursuing" such. Plaintiff was also reluctant to participate in a recommended stress test. An April 14, 2005 examination revealed no evidence that Plaintiff was suffering from angina, unstable or otherwise. In fact, Plaintiff reported that he was "working in [his] yard." The Court recognizes that unstable angina *can* render an individual disabled. However, the mere fact that Plaintiff has been diagnosed with an impairment that may result in disability does not necessarily result in the conclusion that Plaintiff is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (observing that "the mere diagnosis" of a condition "says nothing about the severity of the condition").

While the Court recognizes that Plaintiff's impairments impose on him a certain degree of limitation, the record contains substantial evidence supporting the ALJ's determination that Plaintiff nonetheless retains the ability to preform his past relevant work as a vocational teacher and sales representative.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: March 19, 2008
  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge